Filed 7/31/26  Mirjafarifiroozabadi v. Man CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SEYEDJALIL MIRJAFARIFIROOZABADI, | |
| Plaintiff and Appellant, | G065878 |
| v. | (Super. Ct. No. 30-2025-01463317) |
| CORNELL MAN, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, R. Shawn Nelson, Judge. Affirmed.

Seyedjalil Mirjafarifiroozabadi in pro. per., for Plaintiff and Appellant.

Timothy D. Murphy for Defendants and Respondents.

Seyedjalil Mirjafarifiroozabadi appeals from the judgment after the trial court granted Victoria and Cornell Man's (collectively the Mans) motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion)[1]. We conclude there is no reversible error and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

This case arises from a longstanding dispute over a condominium (property). On one side of the dispute are the Mans, and on the other, Dr. Ray Salari and Seyedjalil Mirjafarifiroozabadi. Before Salari's death, he sued Victoria over ownership of the property. While they later settled, Salari died before he could perform his part of the agreement. After Salari died, Victoria successfully brought an unlawful detainer action against Mirjafarifiroozabadi.

In February 2025, Mirjafarifiroozabadi filed a complaint against the Mans, alleging the following causes of action: (1) elder abuse, (2) fraud, (3) defamation (libel and slander), (4) conversion and theft, (5) wrongful eviction and trespass, (6) intentional interference with estate administration,

---

[1] All further statutory references are to the Code of Civil Procedure unless stated otherwise.

[2] We grant Mirjafarifiroozabadi's unopposed request for judicial notice of a March 19, 2026 minute order in Orange County Superior Court case number 30-2025-01468455. On the court's own motion, we take judicial notice of the Mans' April 1, 2025 notice of motion and motion to strike Jafari's complaint pursuant to section 425.16, the Mans' April 1, 2025 points and authorities in support of their motion, the trial court's July 31, 2025 minute order granting the Mans' motion to strike in Orange County Superior Court Case number 30-2025-01463317, and the record on appeal in the unpublished appellate case *Mirjafarifiroozabadi v. Man*, et al. (July 31, 2026, G066134.) (Evid. Code §452, subd. (d).)

and (7) injunctive relief.  Mirjafarifiroozabadi's complaint alleged the following: In 2018, Salari paid for a property in Fullerton.  Sometime thereafter, Victoria coerced and manipulated Salari into placing her name on the title even though she had no valid ownership interest in the property.  Consequently, Salari initiated a lawsuit against Victoria for elder abuse.  Salari died before the case was resolved.  After Salari's death, the court approved a settlement confirming Salari owed no further payments to Victoria.  Victoria then seized the property, changed the locks, and removed estate assets.  Victoria attempted to evict Mirjafarifiroozabadi through an unlawful detainer action. In her complaint, she accused Mirjafarifiroozabadi of changing the locks.

The Mans filed a motion to strike on the grounds Mirjafarifiroozabadi's complaint arose from their acts in furtherance of their right of petition or free speech in connection with a public issue.  Specifically, they argued the complaint arose from the Mans filing the unlawful detainer action  and Mirjafarifiroozabadi could not succeed on any of his claims.  In granting the motion, the trial court agreed the complaint arose from the Mans filing an unlawful detainer and that Mirjafarifiroozabadi could not succeed on any of his claims.  Mirjafarifiroozabadi timely appealed.

DISCUSSION

I.

INADEQUATE RECORD

A "fundamental principle of appellate procedure [is] that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate

3

practice but an ingredient of the constitutional doctrine of reversible error.' [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.'" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) ""A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."" [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. . . . Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Id*. at p. 609; see also *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574. ["[A] party challenging a judgment has the burden of showing reversible error by an adequate record"].)

"'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].'" (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Further, inadequacy of the record on appeal warrants dismissal of the appeal. (*In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498; see also *McGinnis v. Monjoy* (1959) 169 Cal.App.2d 519, 522–523.)

The record produced by Mirjafarifiroozabadi is inadequate to permit meaningful review of the challenged trial court decision. The record does not include the Mans' motion to strike or the minute order granting the motion. These inadequacies are alone sufficient to justify dismissal of the appeal. Even with an adequate record, Mirjafarifiroozabadi's appeal fails on the merits.

## II.

### ANTI-SLAPP LEGAL PRINCIPLES AND STANDARD OF REVIEW

"Section 425.16 provides, 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 697 (*Mooradian*).)

"In ruling on a motion under section 425.16, the trial court engages in a two-step process. 'First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' [Citation.] 'Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.] If the moving party fails to demonstrate that any of the challenged claims for relief arise from protected activity, the court properly denies the motion to strike without addressing the second step (probability of success). [Citations.]" (*Mooradian*, *supra*, 43 Cal.App.5th at p. 698.)

"We review de novo an order granting or denying a special motion to strike under section 425.16 [citations], considering the parties' pleadings and affidavits describing the facts on which liability or defenses are predicated. [Citations.]" (*Mooradian*, *supra*, 43 Cal.App.5th at p. 699.)

## III.

### STEP ONE: ARISING FROM PROTECTED ACTIVITY

Mirjafarifiroozabadi contends the trial court erroneously granted the Mans' motion to strike because his claims did not arise from a protected activity. We disagree.

"'A claim arises from protected activity when that activity underlies or forms the basis for the claim.' [Citations.] Thus, '[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."' [Citation.] '"[T]he mere fact that an action [or claim] was filed after protected activity took place does not mean the action [or claim] arose from that activity for the purposes of the anti-SLAPP statute."' [*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621; a claim does not "arise from" protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim'].) 'To determine whether a claim arises from protected activity, courts must "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability."'[Citation.]" (*Mooradian*, *supra*, 43 Cal.App.5th at p. 698.)

"Among other types of communications, the anti-SLAPP statute protects 'any written or oral statement or writing made before a legislative, executive, or judicial proceeding' (Code Civ. Proc., § 425.16, subd. (e)(1)) or 'in connection with an issue under consideration or review' in such proceedings (id., subd. (e)(2)). Statements made in preparation for litigation or in

anticipation of bringing an action fall within these categories." (*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 425.) "The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16." (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281.) And the filing of the unlawful detainer complaint falls squarely within the Mans' First Amendment right to petition the court for redress of grievances. (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 ["It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition"].) While "[a] complaint arising out of or based on the dispute or conduct underlying the unlawful detainer action is not subject to a special motion to strike, "'[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1245.) "The pivotal distinction" is "whether an actual or contemplated unlawful detainer action by a landlord (unquestionably a protected petitioning activity) merely 'preceded' or 'triggered' the tenant's lawsuit, or whether it was instead the 'basis' or 'cause' of that suit." (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1289.)

Here, Mirjafarifiroozabadi's complaint, accompanying declarations, and opposition indicate his causes of action arise from the Mans filing their unlawful detainer action. In his opposition to the Mans' motion to strike, Mirjafarifiroozabadi explains his elder abuse, defamation, conversion, and wrongful eviction causes are based on the Mans' acts of "misus[ing] the unlawful detainer . . . process" and "fil[ing] a meritless unlawful detainer action." Similarly, in his opposition, Mirjafaraifiroozabadi alleges his fraud cause of action is based on Victoria falsely representing she had a valid claim

to ownership in her unlawful detainer action. As to his intentional interference with estate administration cause of action, Mirjafarifiroozabadi again alleges Victoria misused the unlawful detainer process. Finally, in his request for injunctive relief, Mirjafarifiroozabadi asks for "a court order preventing [Man] from further interfering with estate assets." According to his own declarations, Mirjafarifiroozabadi's causes of action each arise from the Mans filing their unlawful detainer action. Therefore, the Mans have satisfied the first step in the anti-SLAPP analysis.

Mirjafarifiroozabadi cites *City of Cotati* (2002) 29 Cal.4th 69 and *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*) in support of his argument that the anti-SLAPP statute does not apply because the "gravamen" of his claims is wrongful conduct, not protected activity. Although at one time courts were applying a gravamen test in the first step of an anti-SLAPP analysis, the Supreme Court has made clear it is not the proper inquiry. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009–1011.) Instead, we must first identify each claim for relief pled in the complaint, without being constrained by the way the complaint structures each cause of action. (*Id.* at p. 1010.) Once we identify "each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action," we must determine whether each act or set of acts is protected. (*Ibid.*) If through this analysis it becomes clear a cause of action is a mixed cause of action, meaning one "that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not," we disregard the unprotected acts and reach the second step of the anti-SLAPP analysis with respect to the claims arising from protected activity. (*Ibid.*; see also *Baral v. Schmitt* (2016) 1 Cal.5th 376, 396.) In any event, neither *Cotati* nor *Flatley* are helpful to Mirjafarifiroozabadi.

8

In *Cotati, supra,* 29 Cal.4th 69, mobilehome owners filed a federal lawsuit challenging a city rent stabilization measure. In response, the city filed a declaratory relief action in state court, admittedly to seek a more favorable forum for the dispute. Our Supreme Court held that the city's state lawsuit did not arise from the prior federal action for purposes of the anti-SLAPP statute. Instead, the city's lawsuit simply sought declaratory relief concerning the same underlying controversy—the constitutionality of the city's ordinance. (*Id.* at p. 80.) The court noted that the city's complaint repeatedly referred to the "underlying subject matter" of the prior federal action, i.e., the validity of the ordinance, but contained "no reference to the action itself." (*Id.* at p. 77.) The court concluded that it was not sufficient that the city filed the state action after the federal action or because of that action. Rather, to arise from protected conduct a claim must be *based on* that conduct. Here, each of Mirjafarifiroozabadi's claims is explicitly based on the Mans' protected petitioning conduct. In fact, his complaint does not simply seek declaratory relief concerning any underlying controversy but expressly seeks damages from the Mans' act of filing their lawsuit.

In *Flatley*, our Supreme Court held "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but *either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law*, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley*, *supra*, 39 Cal.4th at p. 320, italics added.) This is because a defendant whose assertedly protected activity is "illegal as a matter of law" is not protected by constitutional guarantees of free speech and petition. (*Id.* at

9

p. 317.) However, to be illegal in this context, the conduct must be a violation of criminal law. (*Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1083; *Collier v. Harris* (2015) 240 Cal.App.4th 41, 55) In *Flatley*, the court concluded that "based on the specific and extreme circumstances of the case," the defendant's conduct therein, which amounted to criminal extortion as a matter of law, was not entitled to the protection of the anti-SLAPP. (*Flatley* at pp. 328, 332–333 & fn. 16.) Here, the evidence does not conclusively establish that the Mans engaged in illegal conduct as a matter of law, nor do the Mans concede they engaged in any alleged illegality. Thus, the Mans' acts do not fit into the narrow *Flatley* exception.

IV.

STEP TWO: PROBABILITY OF PREVAILING

Mirjafarifiroozabadi contends he demonstrated a probability of prevailing on the merits of each of the causes of action in his complaint. Here again, we disagree.

A. *Elder Abuse*

"The Legislature enacted the [Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.)] to protect elders by providing enhanced remedies to encourage private civil enforcement of laws against elder abuse and neglect. [Citation.] . . . [Citation.] The proscribed conduct includes financial abuse. The financial abuse provisions are, in part, premised on the Legislature's belief that in addition to being subject to the general rules of contract, financial agreements entered into by elders should be subject to special scrutiny." (*Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 478.) The elements of financial elder abuse are: (1) "[t]ak[ing], secret[ing], appropriat[ing], obtain[ing], or retain[ing];" or "[a]ssist[ing] in taking, secreting, appropriating, obtaining, or retaining;" (2)

10

"real or personal property;" (3) "of an elder or dependent adult;" and (4) "for a wrongful use or with intent to defraud, or both." (Welf. & Inst. Code, § 15610.30, subd. (a)(1)–(3).)

Mirjafarifiroozabadi alleges the Mans "wrongfully took Dr. Salari's property through deception, coercion, and undue influence, constituting financial elder abuse." Mirjafarifiroozabadi provides no evidence the Mans took property Salari owned. Nor does he provide any evidence they did so with the intent to defraud Salari or for wrongful use. While is it clear Salari and Victoria disagreed about the ownership of the property, the evidence shows they settled their dispute and signed a settlement agreement wherein Salari would pay Victoria for the property. Salari, however, died before he could pay Victoria. The court subsequently dismissed the matter without prejudice for lack of prosecution. Nothing in the evidence supports Mirjafarifiroozabadi's claim that Victoria wrongfully took Salari's property through deception, coercion, and undue influence. Accordingly, we conclude Mirjafarifiroozabadi failed to demonstrate a reasonable probability of prevailing on his elder abuse claim.

B. *Fraud*

Fraud must be proven by clear and convincing evidence. (*Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 605–606.) The elements of fraud are misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

In its entirety, Mirjafarifiroozabadi's cause of action for fraud alleges Victoria "falsely represented to Dr. Salari that she had a valid claim to ownership, causing him financial harm." Mirjafarifiroozabadi presented no evidence to prove any of the elements of fraud.

11

C. *Defamation*

Defamation is "a false and unprivileged publication" that exposes "any person" to "hatred, contempt, ridicule, or obloquy," or which causes a person to be shunned or avoided, or which tends to injure a person in his occupation. (Civ. Code, § 45.) A plaintiff alleging defamation therefore must establish a publication that is: (1) about the plaintiff; (2) unprivileged; (3) false; (4) defamatory; and (5) has a natural tendency to injure or causes special damage. (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 966; *Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 862.)

Statements alleged to be defamatory are not actionable if they are subject to a privilege, including the litigation privilege set forth in Civil Code section 47. (See, e.g., *Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1031.) The litigation privilege applies to a publication or broadcast made in, among others, a judicial proceeding, any other official proceeding authorized by law, or in the initiation or course of any other proceeding authorized by law. (Civ. Code, § 47, subd. (b).) The privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) When it applies, the litigation privilege "is an absolute privilege and bars all tort causes of action except a claim of malicious prosecution." (*Geragos* at p. 1031.)

Mirjafarifiroozabadi alleges Victoria "made false statements" that he "changed the locks and engaged in misconduct, harming his reputation." In his supplemental declaration, Mirjafarifiroozabadi explains the defamatory statements were made in Victoria's unlawful detainer cause of action against him. Victoria allegedly "label[ed] [him] as a 'squatter' despite

12

full knowledge of [his] legal role as Executor and [Power of Attorney]." (Boldface omitted.) Mirjafarifiroozabadi makes no allegation that Victoria made these statements anywhere other than in the unlawful detainer complaint. While he alleged the Mans "posted defamatory statements in public places," Mirjafarifiroozabadi does not clarify or provide any evidence indicating where these public spaces are. In his objection to the Mans' proposed order after ruling on the anti-SLAPP motion, Mirjafarifiroozabadi adds that the Mans "publicly posted" the unlawful detainer complaint at Mirjafarifiroozabadi's place of business. In his declaration opposing the motion, however, Mirjafarifiroozabadi alleges it was a "a local public interest organization" that "found the court documents and delivered them to [his] medical office . . . where they [were] improperly posted." There, "they were seen by [his] staff, colleagues, and patients." Mirjafarifiroozabadi does not allege it was the Mans who publicly posted the unlawful detainer, but rather the "local public interest organization." In fact, he reiterates that the statements by the Mans were contained only within the unlawful detainer court documents in his declaration.

Because Mirjafarifiroozabadi does not allege the Mans made the defamatory statements other than in their unlawful detainer complaint, the alleged defamatory statements come within the litigation privilege. (See *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1249 ["We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action."]; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1195 ["we can imagine few communicative acts more clearly within the scope of the [litigation] privilege than . . . filing the complaint and subsequent pleadings in the litigation"].)

13

D. *Conversion and Theft*

"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.'" (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 221.) "'""The foundation for the action for conversion rests neither in the knowledge nor the intent of the defendant. . . . [Instead], "the tort consists in the breach of what may be called an absolute duty; the act itself . . . is unlawful and redressible as a tort."""' . . .' [Citation.] Therefore, questions of good faith, lack of knowledge and motive are ordinarily immaterial." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 544.)

In the cause of action for "conversion and theft," Mirjafarifiroozabadi alleges Victoria "unlawfully took possession of estate assets, constituting theft and conversion." However, he has not provided any evidence that he owned or had a right to possession over the property at the time Victoria changed the locks. Rather, the evidence shows that whatever settlement agreement that may have resulted in the transfer of the property from Victoria to Salari did not occur because Salari died before he could perform his part of the settlement agreement. Moreover, in Mirjafarifiroozabadi's own email to Victoria's attorney, he recognizes she is "the title holder of his condominium." Thus, Mirjafarifiroozabadi has not demonstrated that his claims for conversion or theft have minimal merit.

E. *Wrongful Eviction and Trespass*

The essential elements of a tort cause of action for wrongful entry or eviction are (1) the plaintiff's "'peaceable possession,' of the premises" and

14

(2) the defendant's "forcible entry." (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1039.)

In his complaint, Mirjafarifiroozabadi alleges Victoria "had no legal right to evict [him] or change the locks." But he offers no evidence to support either element of his cause of action for wrongful eviction. His declaration does not state he was in possession of the property when he was allegedly evicted or locked out. Rather, Mirjafarifiroozabadi admitted in an email to Victoria's attorney that Victoria held title to the property.

F. *Intentional Interference with Estate Administration*

In support of his cause of action for intentional interference with estate administration, Mirjafarifiroozabadi alleges that, "By stealing estate property and making false claims, [Victoria] interfered with [Mirjafarifiroozabadi's] legal duties as executor." Although the record is not clear, in part due to the lack of a reporter's transcript, it appears Mirjafarifiroozabadi cited Probate Code, sections 8400, 8500, and Code of Civil Procedure section 377.31 in support of this cause of action.

Probate Code section 8400 provides: "(a) A person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective. Appointment of a personal representative becomes effective when the person appointed is issued letters. [¶] (b) Subdivision (a) applies whether or not the person is named executor in the decedent's will, except that a person named executor in the decedent's will may, before the appointment is made or becomes effective, pay funeral expenses and take necessary measures for the maintenance and preservation of the estate." (Prob. Code, § 8400.) Probate Code section 8500 authorizes removal of a personal representative upon a party's petition or the court's own motion. (§ 8500, subds. (a), (b).) Code of Civil Procedure section 377.31

15

provides, "On motion after the death of a person who commenced an action or proceeding, the court shall allow a pending action or proceeding that does not abate to be continued by the decedent's personal representative or, if none, by the decedent's successor in interest." None of these sections provide authority to support a cause of action for intentional interference with estate administration. Thus, Mirjafarifiroozabadi has not demonstrated his cause of action for intentional interference with estate administration has minimal merit.

G. *Injunctive Relief*

As to his final cause of action for injunctive relief, Mirjafarifiroozabadi "requests a court order preventing [Victoria] from further interfering with estate assets." However, he failed to support this cause of action with any evidence that the Mans have interfered with estate assets.

## DISPOSITION

The judgment is affirmed. The Mans are entitled to their costs on appeal.

DELANEY, ACTING P. J.

WE CONCUR:

SCOTT, J.

SERVINO, J.

17